Argued and submitted February 29, reversed and remanded for resentencing
September 13, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## EDWARD BAMBINO THIEHOFF,
*Appellant.*

(9707-35741; CA A101271)

10 P3d 322

Daniel Q. O'Dell, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Defendant appeals from a judgment of conviction, challenging the trial court's imposition of a five-year minimum sentence pursuant to ORS 161.610.[1] That statute provides for the imposition of a minimum sentence for felonies "having as an element *the defendant's use or threatened use* of a firearm during the commission of the crime." ORS 161.610(3) (emphasis added). Defendant asserts that the trial court improperly imposed the minimum sentence because defendant's theory of the case and the jury instructions were such that the jury did not necessarily find that defendant personally used or threatened to use a firearm. We review for errors of law, *State v. Akin*, 125 Or App 351, 353, 865 P2d 461 (1993), *rev den* 318 Or 478 (1994), and reverse and remand for resentencing.

Defendant was charged with, among other things, the unlawful use of a weapon. ORS 166.220.[2] The only material factual dispute at trial was whether defendant was the one who fired the shots in a drive-by shooting. The state presented evidence establishing that defendant and his friend, Travis Powell, drove past defendant's former girlfriend's house and that one of the two men fired eight shots at the house from the driver's side window of the car. A 12-year-old witness testified that she saw the car approach the house and that the driver reached out and fired several shots. Defendant and Powell were apprehended by police shortly thereafter. When the police stopped the car, defendant was in the

---

[1] Defendant also raises constitutional challenges to certain provisions of Ballot Measure 40 and Senate Bill 936 that pertain to the exclusion of prospective jurors. We have resolved those challenges contrary to defendant's position. *See State v. Fugate*, 154 Or App 643, 963 P2d 686, *adhered to as modified* 156 Or App 609, 969 P2d 395 (1998), *rev allowed* 328 Or 275 (1999); *State v. Crocker*, 160 Or App 445, 982 P2d 45 (1999).

[2] ORS 166.220 provides, in part:

"(1) A person commits the crime of unlawful use of a weapon if the person:

"* * * * *

"(b) Intentionally discharges a firearm * * * within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge."

Defendant also was convicted of reckless endangerment, unauthorized use of a motor vehicle, and being a felon in possession of a weapon. His sentences on those convictions are not challenged on appeal.

driver's seat and Powell was in the passenger's seat. The police found the gun under the passenger's seat.

Powell testified under a grant of immunity. Although he claimed that he did not fire the gun and acknowledged that only he and defendant were in the car, he refused to say who did fire the gun. He previously had told the police that defendant fired it. Defendant did not testify.

The state asserted in its closing argument that it had presented overwhelming evidence that defendant fired the shots. Defendant acknowledged in his closing argument that he drove by the home, that shots were fired, and that one of the two men did it. Defendant's theory of the case, however, was that Powell reached across defendant and fired the shots out of the driver's side window. He urged the jury to discount the 12-year-old witness's testimony because she did not have a sufficient opportunity to view the person who actually pulled the trigger. On rebuttal, the state explained to the jury that, even if it concluded that Powell had fired the shots, it could still convict defendant under an aiding and abetting theory. The state asked for and received an aiding and abetting jury instruction, and the jury returned a general verdict of guilt.

At sentencing, the state urged the trial court to impose a minimum sentence pursuant to ORS 161.610(3), which applies "if a defendant is convicted of a felony having as an element *the defendant's use or threatened use* of a firearm during the commission of the crime." (Emphasis added.) The trial court concluded that the evidence overwhelmingly supported the finding that defendant was the driver and that the "driver specifically was the one who fired the weapon." Based on that finding, the trial court imposed a five-year minimum sentence.

The sole question on appeal is whether the trial court erred in imposing that sentence. The Supreme Court has construed ORS 161.610 to apply only if the defendant "personally" used or threatened to use a firearm. *State v. Wedge*, 293 Or 598, 604, 652 P2d 773 (1982). We have held, additionally, that the statute does not apply when the defendant merely aided and abetted in the commission of the crime. *State v. Pies*, 104 Or App 646, 650, 802 P2d 702 (1990). Citing *Wedge* and *Pies*, defendant asserts on appeal that the

trial court erred because the verdict form provides no basis to determine whether the jury convicted defendant under an aiding and abetting theory or on the theory that defendant was the one who actually pulled the trigger. We agree.

In *Wedge*, the facts established that the defendant was one of three masked men who broke into a home and robbed a family. Two of the men were armed with guns; the other was armed with a knife. The defendant was apprehended shortly thereafter. The indictment charged the defendant in such a way that the jury could have found the defendant guilty of all of the offenses based either on a finding that the defendant was one of the gunmen or that he was the man with the knife. The fact that the defendant was convicted of all of the charges, then, did not necessarily establish the defendant's use of a firearm. *Wedge,* 293 Or at 603. The trial court nevertheless imposed a five-year minimum sentence pursuant to ORS 161.610(4) (1981). At the time, the statute allowed the trial court, based on the evidence presented at trial in addition to evidence presented at a presentence hearing, to find beyond a reasonable doubt that the defendant used or threatened to use a firearm during the commission of the crime. *See* ORS 161.610(3) and (4) (1981).[3] The defendant appealed, contending that the trial court's finding violated his constitutional right to a trial by jury.

In construing ORS 161.610 (1981), the Supreme Court said:

"In *State v. Hicks*, 38 Or App 97, 589 P2d 1130 (1979), construing a similar statute, *former* ORS 166.230, the court stated that an enhanced penalty can be given only to a person who has actual physical possession of a gun during the

---

[3] ORS 161.610 (1981) provided, in part:

"(3) Unless the conviction necessarily establishes that the defendant used or threatened to use a firearm during the commission of the crime, or unless *the defendant admits on the record that he used or threatened to use a firearm* during the commission of the crime, whenever the court has reason to believe that the defendant so used or threatened to use a firearm, it shall set a presentence hearing on the matter. The parties may offer evidence and examine and cross-examine witnesses during the hearing.

"(4) * * * [I]f the court finds beyond a reasonable doubt that the defendant used or threatened to use a firearm during the commission of the crime, it shall impose at least the minimum term of imprisonment [5, 10, or 30 years] as provided in subsection (5) of this section."

commission of a felony because there is no statutory basis for enhanced penalty based on vicarious liability. We agree with this interpretation."

*Id.* at 603-04.[4] The court in *Wedge* therefore concluded that a sentencing court "would be without authority to sentence [the] defendant [pursuant to ORS 161.610] if there were no finding he *personally used or threatened to use* a firearm." *Id.* at 604 (emphasis added). The Supreme Court also concluded that, because the jury in *Wedge* could have convicted the defendant either because he was the man armed with a knife or because he was one of the gunmen, the trial court's post-verdict finding pursuant to ORS 161.610 (1981) had the effect of denying the defendant his right to jury trial under the Oregon Constitution. *Id.* at 608-09.

In 1985, the legislature amended ORS 161.610 to delete the provision allowing the trial court to make the post-verdict finding that the defendant used or threatened to use a firearm. That statute now applies only when the use or threatened use of a firearm is an element of a felony conviction or is pleaded in the accusatory instrument and proved at trial as an element of an aggravated crime. Or Laws 1985, ch 552, § 1.

After the 1985 amendments, we decided *Pies*, in which we applied the "personal use" test to a case in which the defendant was charged and tried under an aiding and abetting theory. The record established that the defendant was armed at the time of the robbery. However, the defendant was concealed in a closet while the other robber actually confronted the victim. *Pies,* 104 Or App at 648. Thus, even if the defendant had intended to use the firearm, the evidence did not establish that the defendant personally used or threatened to use the firearm. We therefore held that the trial court improperly imposed the gun minimum. *Id.* at 651.

■ *Pies* and *Wedge* both stand for the proposition that, if a minimum sentence is to be imposed pursuant to ORS

---

[1] ORS 161.610 was preceded by *former* ORS 166.230 (1977), which provided for an enhanced sentence of 10 years for "[a]ny person who commits or attempts to commit any felony * * * while armed with any * * * firearm capable of being concealed upon the person." *State v. Warner*, 52 Or App 987, 992, 630 P2d 385, *rev den* 291 Or 662 (1981).

161.610, the finder of fact must first determine that the defendant personally used or threatened to use a firearm. That determination is reserved *exclusively* for the finder of fact. When the factfinder is a jury, the jury must explicitly make a finding in that regard or the conviction as charged must require that finding, even if that finding is not expressly made. The trial court cannot make the requisite finding of fact *post hoc.*

■     With those cases as a backdrop, we turn to the circumstances before us. This case presents a slight variation of the problems identified in *Wedge* and *Pies.* Here, the indictment alleges that "defendant * * * discharge[d] a firearm." The state, consistent with that allegation, presented evidence from which the jury could have made that finding. Defendant's theory of the case, however, was that Powell fired the gun. The state successfully requested the court to instruct the jury that it could find defendant guilty of the offense as charged if it concluded that defendant aided and abetted Powell in the commission of the crime.[5] Because the jury was so instructed, its verdict in this case does not necessarily reflect a finding that defendant personally used a firearm, even though the indictment alleges that "defendant" fired the shots. Given the jury's general verdict, we have no way of knowing which theory the jury chose to accept. In short, under the circumstances of this case, the jury did not have to conclude that defendant personally used the weapon in order to convict defendant of the charged offense.

The state argues nonetheless that this case is distinguishable from *Wedge* and *Pies* because the evidence "overwhelmingly" established that defendant actually possessed and used the firearm. We decline the state's invitation to decide this issue on the basis of how the jury most likely decided this case, rather than on the basis of how it could

---

[5] The trial court instructed the jury that "a person is criminally liable for the criminal conduct of another if, with the intent to promote or facilitate commission of the crime, the person aids or abets someone else in committing the crime; solicits or commands someone else to commit the crime; or attempts to aid or abet someone in committing the crime." During deliberations, the jury sent a note to the trial court requesting the court to clarify whether "aiding and abetting * * * in the commission of a crime [is] equivalent to committing the crime from the standpoint of guilt or innocence for the crime." The trial court answered the question by providing the jury with a tape recording of the previously given jury instructions.

have, based on the evidence, the instructions, and the arguments of counsel. As *Wedge* makes clear, the test is not a measure of the quantum of evidence; it is whether the jury's verdict necessarily reflects that it found that the defendant personally used a firearm. Here, it does not. Accordingly, the trial court erred in imposing the five-year minimum based on its own post-verdict finding that the "evidence is simply overwhelming that he is the person who did the shooting."

Alternatively, the state asserts that *Wedge's* construction of ORS 161.610 (1981) is not controlling because it was *dictum*. As we have previously held, the court's construction of ORS 161.610 (1981) in *Wedge* was essential to the court's holding because the trial court would not have had to reach the constitutional question if it had been able to construe the statute to provide that "use of a gun by one of those involved in the commission of the crime were sufficient to trigger application of ORS 161.610 as to the others involved." *State v. Thiesies*, 63 Or App 200, 203, 662 P2d 797 (1983). Thus, we have already decided that question contrary to the state's position.

As a final point, and in anticipation of our rejection of the state's other arguments, the state asserts that our decisions in *Pies* and *Thiesies* are "simply wrong." The state's arguments are unpersuasive; we adhere to our prior decisions.

The trial court erred in imposing the five-year minimum sentence.

Reversed and remanded for resentencing.